## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 7** |
| | ) | |
| **AGRIPROCESSORS, INC.,** | ) | |
| | ) | **BANKRUPTCY NO. 08-02751** |
| Debtor. | ) | |
| | ) | |
| **JOSEPH  E. SARACHEK,** | ) | |
| **in his capacity as** | ) | |
| **CHAPTER 7 TRUSTEE,** | ) | **ADVERSARY NO. 10-09197** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **STEVE COHEN,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case is before the Court on the parties' Cross-Motions for Summary Judgment on Trustee's Complaint alleging Defendant, Steve Cohen, received avoidable preferential transfers to an insider and/or fraudulent conveyances. Keith Larson represented the Trustee. Ryan Murphy and Jeff Courter represented Steve Cohen. After hearing the parties' arguments, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## STATEMENT OF THE CASE

Trustee moved for partial summary judgment on his claim of preferential transfers to an insider. Trustee argues that there is no genuine dispute of material fact on the elements of his prima face case under § 547(b). Trustee argues that the

only facts in dispute relate to the defenses Cohen raises under § 547(c).  Cohen

resists the Trustee's Motion for Summary Judgment, particularly on the insider and

insolvency requirements.

Cohen also made his own Cross-Motion for Summary Judgment on all of the

Trustee's claims.  Cohen argues Trustee's fraudulent conveyance claims under

§ 548(a)(1)(B) fail as a matter of law because the record is undisputed that he gave

reasonably equivalent value in exchange for payments he received.  Cohen also

argues Trustee's preferential transfer claims fail as a matter of law.  He asserts that

the undisputed facts show that the transfers he made to Debtor were

contemporaneous exchanges for new value, and/or that he gave subsequent new

value as a matter of law.  In other words, he asserts there is no genuine issue of

material fact on his defenses under § 547(c).

Trustee responds to the cross-motion arguing Cohen's arguments under

§ 548 about reasonably equivalent value should be rejected under the equitable

doctrine of unclean hands.  Trustee also argues Cohen's defenses under § 547(c)

rely on disputed, not undisputed facts.  Trustee argues the Court should reject

Cohen's arguments under § 548 about reasonably equivalent value under the

equitable doctrine of unclean hands.

2

After a thorough review of the record, the Court grants Cohen's Motion for

Summary Judgment on Trustee's fraudulent conveyance claims.  The Court denies

Trustee's Motion for Partial Summary Judgment because there is a genuine issue

of material fact on the question of whether Cohen was an insider.  The Court also

denies Cohen's Motion for Summary Judgment  on Trustee's preference claims

because there are genuine disputes of material fact on the defenses he asserts.

## FACTUAL BACKGROUND

Debtor owned and operated one of the nation's largest kosher meatpacking

and food-processing facilities in Postville, Iowa.  On November 4, 2008, Debtor

filed a Chapter 11 petition in the Bankruptcy Court for the Eastern District of New

York.  Debtor's bankruptcy petition and accompanying documents recited that its

financial difficulties resulted from a raid conducted by U.S. Immigration and

Customs Enforcement.  A total of 389 workers at the Postville facility were

arrested.  The raid led to numerous federal criminal charges, including a high-

profile case against Debtor's President, Sholom Rubashkin.[1]  Debtor's Petition also

stated it had over 200 creditors and assets and liabilities in excess of

$50,000,000.00.

---

[1] Rubashkin was convicted on 85 counts of financial fraud.

3

The Bankruptcy Court for the Eastern District of New York eventually approved the appointment of Joseph E. Sarachek as the Chapter 11 trustee. The Court concluded that appointing a trustee was necessary in part "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management" under § 1104(a)(1). After hearings in a later proceeding, the Court transferred the case to this Court on December 15, 2008. This Court eventually granted the Trustee's motion to convert the case to a Chapter 7 bankruptcy. The U.S. Trustee for this region retained Sarachek as the Chapter 7 trustee.

Sarachek filed over 150 adversary cases including a case against Defendant Twin City Poultry ("TCP") and this companion case against its President Tzvi "Steve" Cohen. Trustee seeks to recover payments of $265,000 made from Debtor to Cohen within two years of bankruptcy.

The facts of the TCP and Cohen cases are intertwined. TCP is a kosher food distributor in Minneapolis, Minnesota. TCP had a long relationship with Debtor. TCP eventually purchased much of its Kosher meat product from Debtor.

TCP and Debtor began their relationship sometime around 1985. Debtor was in the Kosher meat business and TCP was a Kosher meat product distributor.

4

Debtor's sales department—probably through Heshy Rubashkin—would contact TCP's meat buyer, which was Hillel Roberts, who was also TCP's majority owner and President.

Cohen, TCP's current President, assumed majority control of TCP and became president after the death of Hillel Roberts in 2006. TCP had employed Cohen since 1978. When Cohen started, TCP had two employees. Now it has between 50 and 80 employees.

Cohen described the TCP-Debtor relationship as "a business relationship, but there was an affinity because [the officers of each were] both Orthodox Jews." (Cohen Depo., ECF Doc. No. 51-3, at 17.) Cohen agreed the Orthodox Jewish community was "a close-knit community." Id. He agreed that was especially true when they are dealing with the higher level of glatt Kosher. Id. Cohen noted that TCP started making loans to Debtor in the 1990s. He agreed that TCP was not a lending or banking institution and generally did not make loans to other corporations or individuals. Id. He noted that over the years TCP made more than 105 loans to Debtor.

He described the reason for the loans as:

A.    If we had cash available - - they were our primary processor. It helped - - it helped get the product to us, let's put it that way.

5

> We have favored nation status by virtue of the fact that we were
> helpful with them in their financial needs as well. We had
> product - - we had available dollars and, therefore, we loaned to
> them on an ongoing basis, and some back and forth.

(Cohen Depo., ECF Doc. No. 51-3, at 26.)  He says TCP provided loans because

Sholom Rubashkin asked.  Cohen did not ever quiz Rubashkin about why he

needed the funds or why he didn't just use a bank.  Cohen did not think it was

unusual because a processor, like Debtor, had to pay cash up front for the

product—and it took a while to process and turn the product to cash.  Cohen

looked at it like "an advance" on what TCP would eventually owe anyway.  Cohen

also admitted that he provided financing to Debtor in his personal capacity.  Cohen

believes that he made the loans personally when he had funds available and TCP

did not.

The process for the loans was simple.  Debtor would request funding from

Defendants, TCP or Cohen would draft a check made payable to the Debtor, and

Debtor would allegedly repay the loan.  There was no particular schedule for

payment and each transaction was unique in its terms.  The balance owing was in

constant flux.  The loans had no consistent maturation date and were paid off

intermittently.  None of the financing agreements were documented, secured by

collateral, or subject to interest charges.

6

Cohen and Sholom Rubashkin were friends dating to a time when they both lived in Minneapolis. They got to know each other and engaged in religious studies together. There was also a friendship between their families. Cohen and Rubashkin spoke on the phone every morning at 10:00 or 11:00 for several years. They discussed business matters and often discussed the balance of the accounts and advances Defendants made to Debtor. Cohen understood the above-described arrangement as a trade credit relationship between TCP and Debtor. (Cohen Depo., ECF Doc. No. 51-3, at 29–31.)

Trustee here is attempting to recover $265,000 of payments made from Debtor to Cohen. In particular, those payments are: (1) a February 26, 2008 payment of $75,000; (2) a second February 26, 2008 payment of $75,000; (3) a March 31, 2008 payment of $65,000; and (4) a second March 31, 2008 payment of $50,000. Cohen asserts that all of these payments retired short-term loans for the identical amount of the loans made and cannot be considered fraudulent transfers under § 548(a)(2). Cohen also argues the Trustee's § 547(b) claims fail as a matter of law because the undisputed record shows a contemporaneous exchange for new value and/or subsequent new value.

7

Trustee resists and argues Cohen had unclean hands and cannot assert the § 548 defense. Trustee also notes there are factual issues regarding both of Debtor's § 547(c) defenses. Trustee also made a Cross-Motion for Summary Judgment. Trustee also points out he has alternatively made claims to set aside preferential transfers to an insider under § 547(b). He asserts there is no genuine issue of fact regarding whether Cohen is an insider. Trustee asserts Cohen has failed to contradict any of the § 547(b) elements and thus his prima facie claim is established as a matter of law. Cohen resists and argues there is not sufficient proof he is an insider. He also argues Trustee has failed to prove Debtor's insolvency as required under § 547(b).

## CONCLUSIONS OF LAW AND DISCUSSION

### A. SUMMARY JUDGMENT STANDARDS

Summary judgment is governed by Rule 7056 of the Federal Rule of Bankruptcy Procedure. Rule 7056 applies Federal Rule of Civil Procedure 56 in adversary proceedings. Rule 56 states, in relevant part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The granting of "[s]ummary judgment is proper if, after viewing the

8

evidence and drawing all reasonable inferences in the light most favorable to the

nonmovant, no genuine issues of material fact exist and the movant is entitled to

judgment as a matter of law." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th

Cir. 2007). Summary judgment is appropriate when only questions of law are

involved. Podkovich v. Glazer's Distribs. of Iowa, Inc., 446 F. Supp. 2d 982, 995

(N.D. Iowa 2006) (quoting Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d

1311, 1315 (8th Cir. 1996)).

The burden of showing there are no genuine issues of material fact belongs

to the moving party. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465,

468 (8th Cir. 2004). "Once the movant has supported the motion, the non-moving

party 'must affirmatively show that a material issue of fact remains in dispute and

may not simply rest on the hope of discrediting the movant's evidence at trial.'"

Schnittjer v. Houston (In re Houston), 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008)

(quoting Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)). "When

a moving party has carried its burden under Rule 56(c), the party opposing

summary judgment is required under Rule 56(e) to go beyond the pleadings, and

by affidavits, or by the depositions, answers to interrogatories, and admissions on

file, designate specific facts showing there is a genuine issue for trial." G.E.

9

Capital Corp. v. Commercial Servs. Grp., Inc., 485 F. Supp. 2d 1015, 1022 (N.D.

Iowa 2007) (quotations omitted) (emphasis added).

"A 'material' fact is one 'that might affect the outcome of the suit under the

governing law . . . .'" Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue of

material fact is genuine if a reasonable fact-finder could return a verdict for the

nonmoving party on the question.  Anderson, 477 U.S. at 252.  Evidence that raises

only "some metaphysical doubt as to the material facts" does not create a genuine

issue of fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986).  "'Where the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no genuine issue for trial.'"  Blocker v.

Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita, 475

U.S. at 587).  The parties have made cross motions for summary judgment on the

Trustee's claims.

**B.  THE TRUSTEE'S CLAIMS**

The Trustee has advanced two rationales for recovering funds Debtor

transferred to Cohen.  Trustee first seeks to recover under § 548, which permits the

Trustee to avoid fraudulent conveyances made within two years of the petition

10

date.  11 U.S.C. § 548(a)(1).  Trustee asserts the transfers here are fraudulent

because the Debtor was insolvent, or became insolvent as a result of transferring

property, and did not receive equivalent value from Cohen for the transfers.  11

U.S.C. § 548(a)(1)(B).  Trustee also seeks to recover under § 547 of the

Bankruptcy Code which empowers the Trustee to avoid preferential transfers.  11

U.S.C. § 547(b).  Trustee asserts Cohen is an "insider" of Debtor and that the estate

may recover any preferential transfers made within the one year before the petition

date.  11 U.S.C. § 547(b)(4).

### C.   COHEN'S MOTION FOR SUMMARY JUDGMENT ON FRAUDULENT CONVEYANCE CLAIM

To recover a "constructively" fraudulent conveyance under § 548, Trustee

must show that the Debtor received less than equivalent value and was insolvent on

the date of, or as the result of, the transfer to Cohen.  11 U.S.C. § 548(a)(1)(B).

Cohen requests summary judgment on this issue, claiming that it provided

equivalent value to Debtor.  Trustee resists, contending equitable principles should

bar Cohen from advancing an affirmative defense as a matter of law.

### 1.   Cohen's Equivalent Value Defense

To win on summary judgment, Cohen must prove that there is no genuine

issue of material fact as to whether Debtor received equivalent value.  11 U.S.C.

§ 548(a)(1)(B).  The equivalent value defense is distinct from the new value

defense discussed supra.  Jones v. Ryder Integrated Logistics (In re Jotan, Inc.),

264 B.R. 735, 751 n.6 (Bankr. M.D. Fla. 2001).  The court in Jotan explained:

> [T]he requirement of specific proof of valuation separates the
> § 547(a)(2) "new value test from the § 548 reasonably equivalent
> value concept—the former is an economic analysis, while the latter is
> merely an anti-fraud provision.  It is this distinction that allows a court
> to conclude that a preferential transfer is not fraudulent under § 548
> because "reasonably equivalent value" was given and at the same time
> to conclude that the same preferential transfer may be avoided
> because insufficient "new value" was provided to satisfy § 547(c)(1)
> or § 547(c)(4).  Not all consideration qualifies as "new value."

Id.

Retirement of prior debt is reasonably equivalent value for purpose of the

fraudulent conveyance defense.  Stalnaker v. Gratton (In re Rosen Auto Leasing,

Inc.), 346 B.R. 798, 805 (B.A.P. 8th Cir. 2006).  Cohen has conclusively shown

that the payment it received from Debtor in the two-year fraudulent transfer period

was the exact equivalent value it had advanced.  In other words, TCP received

transfers that simply retired undisputed amounts of antecedent debt.  Trustee does

not resist this point.

12

### 2.    Cohen's Equivalent Value Defense Is Not Barred by Equity

Instead, Trustee argues that Cohen should not be permitted to assert the

equivalent value defense because the defense is equitable in nature and Cohen was

complicit in either Debtor's or Rubashkin's fraud.  Trustee's argument rests on two

contentions: (1) the equivalent value defense is equitable in nature; (2) Cohen

acted inequitably in aiding and abetting the Debtor's fraud.

### a.    The Equivalent Value Defense Is Not an Affirmative Equitable Defense

Trustee contends that Cohen should be barred from asserting an affirmative

defense because Cohen seeks an equitable remedy but has unclean hands.  "An

affirmative defense 'requires a responding party to <u>admit</u> a complaint's allegations

but then . . . assert that for some legal reason [the responding party] is nonetheless

excused from liability."  <u>Springer v. Okaw Truss, Inc. (In re Top Flight Stairs &</u>

<u>Rails Ltd.)</u>, 398 B.R. 321, 325 (N.D. Ill. 2008) (quoting <u>Reis Robotics USA, Inc. v.</u>

<u>Concept Indus., Inc.</u>, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006)).  A bankruptcy

court has wide discretion in determining whether to apply the clean hands doctrine

of equity.  <u>O'Brien v. Cleveland (In re O'Brien)</u>, 423 B.R. 477, 492 (Bankr. D.N.J.

2010) (citing <u>Precision Instrument Mfg. v. Auto Maint. Mach. Co.</u>, 324 U.S. 806,

13

815 (1945)).  Otherwise clean hands are tainted when "a party seeking affirmative relief . . . is guilty of conduct involving fraud, deceit, unconscionability, or bad faith . . . ."  In re O'Brien, 423 B.R. at 492 (citing Castle v. Cohen, 676 F. Supp. 620, 627 (E.D. Pa. 1987)).

Cohen's argument that Debtor received equivalent value is not an affirmative defense.  An essential element of the Trustee's prima facie case of constructive fraud is to show a failure by the defendant to provide the debtor less than equivalent value in the transfer.  Arguing the Trustee has failed to do so is not an affirmative defense and makes no appeal to equity.  In re Top Flight, 398 B.R. at 324.

### b.      Debtor's Fraud Cannot Be Imputed to Cohen

The Court acknowledges that there are some instances where a transferee's involvement with a debtor's fraud may prevent transferee from asserting some defenses.  "When the transferee or obligee is in a position to dominate or control the debtor's disposition of his property, however, his intent to hinder, delay or defraud creditors may be imputed to the debtor so as to render the transfer fraudulent within section **548(a)(1)(A)**, regardless of the actual purpose of the debtor transferor."  Elway Co., LLP v. Miller (In re Elrod Holdings Corp.), 421

14

B.R. 700, 709 (Bankr. D. Del. 2010) (quoting 5 Collier on Bankruptcy ¶ 548.01 at

548–24 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2009)) (emphasis

added).

This rule—by its terms—is limited to cases asserting actual fraud.  Trustee

here raised no claim of actual fraud under § 548(a)(1)(A).  Trustee's claim was for

constructive fraud under § 548(a)(1)(B), which requires proof of lack of reasonably

equivalent value.  Trustee simply cannot rely on a possible defense to a

§ 548(a)(1)(A) claim to try to save its § 548(a)(1)(B) claim.

### D.    TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREFERENTIAL TRANSFER CLAIM

To prove a debtor made a preferential transfer to defendant/creditor, the

Trustee must show that the transfer (1) was made for the creditor's benefit; (2) was

for a preexisting debt; (3) occurred while the debtor was insolvent; (4) occurred

within ninety days before the filing of the petition—or one year before the filing of

the petition if the creditor is an "insider;" and (5) distributed more to the debtor

than he would have received in a Chapter 7 liquidation.  11 U.S.C. § 547(b).

Trustee bears the burden of establishing facts to support each of these elements.

Id.  Trustee asserts Cohen was an insider and the one-year preference recovery

applies.

15

Trustee has requested partial summary judgment only on the preferential

transfer claim.  Trustee asks this Court to find there is no genuine issue of material

fact and that he has proved: (1) Cohen was an insider; and the one year preference

recovery period applies, (2) Debtor was insolvent at the time, and (3) Defendants

received more than they would have in a Chapter 7 liquidation.  11 U.S.C. §

547(b)(4); 11 U.S.C. § 547(b)(3); 11 U.S.C. § 547(b)(5).  Trustee asserts that

Debtor has admitted each of the transfers was for Cohen's benefit and that each

transfer was made on account of antecedent debt.  11 U.S.C. § 547(b)(1); 11

U.S.C. § 547(b)(2).

### 1.    Insider Status

The $265,000.00 worth of transfers the Trustee seeks to recover from Cohen

were made outside of the ninety-day period but within one year of the petition date.

To recover using the one-year period, the Trustee must prove Cohen was either a

statutory or non-statutory "insider."  11 U.S.C. § 547(b)(4)(B).  As this Court has

previously noted:

> Section 101(31)(B)(vi) defines the term "insider."  Where, as here,
> Debtor is a corporation, the term "insider" includes a "relative of a
> general partner, director, officer, or person in control of the debtor."
> 11 U.S.C. § 101(31)(B)(vi).  Under § 101(45), "relative" is defined as
> an "individual related by affinity or consanguinity within the third
> degree as determined by the common law . . . ."  Id.  An "insider" can

16

also be what is referred to as a "non-statutory insider." A non-statutory insider "is said to be an entity with a sufficiently close relationship to the debtor that its conduct is made subject to closer scrutiny than those dealing at arm's length with debtor." In re Riversideworld, Inc., 366 B.R. 34, 43 (Bankr.N.D. Iowa 2007). Trustee has alleged that the relationships here establish Defendant as both a statutory and non-statutory insider.

Sarachek v Chabad of N. Fulton, Inc.( In re Agriprocessors, Inc.), Bankr. No. 08-02751, Adv. No. 10-09131, 2011 WL 4900037, at *6 (Bankr. N.D. Iowa Oct. 14, 2011). As this Court has also stated:

> The definition [of statutory insider] is not limiting because Congress used the word "includes." Miller Ave. Prof'l & Promotional Servs. v. Brady (In re Enter. Acquisition Partners, Inc.), 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004). Thus, in addition to those insiders listed in the statutory definition—known as per se insiders—there are also "insiders" that have a "sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Id.

Sarachek v. The Right Place, Inc.(In re Agriprocessors, Inc.), Bankr. No. 08-02751, Adv. No. 10-09123, 2011 WL 4621741, at *7 (Bankr. N.D. Iowa Sept. 30, 2011).

Beyond this definition, the Eighth Circuit determines whether a creditor qualifies as a non-statutory insider through inquiry into whether the defendant had an ability to control a debtor. Stalnaker v. Gratton (In re Rosen Auto Leasing), 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006) (citing Carlson  v. Farmers Home Admin. (In

17

re Newcomb), 744 F.2d 621, 622 n.4 (8th Cir. 1984)).  The Eighth Circuit B.A.P.

has pointed out "the ability of a creditor to compel payment of a debt is insufficient

control to render the creditor an insider."  Rosen, 346 B.R. at 804 (citing

Newcomb, 744 F.2d at 624 n.4).  However, as the Court noted in The Right Place:

> [I]t is not necessary that a non-statutory insider have actual control;
> rather, the question "is whether there is a close relationship [between
> the debtor and creditor] and . . . anything other than closeness to
> suggest that any transactions were not conducted at arm's length."  In
> re KCMVNO, Inc., No. 10–50730(BLS), 2010 WL 4064832, at *4
> (Bankr. D. Del. Oct. 15, 2010) (quoting Schubert v. Lucent Techs., (In
> re Winstar Comm'ns., Inc.), 554 F .3d 382, 396–97 (3d Cir.2009)).

Id. at *10.  These inquiries are questions of fact.  Wilson, 712 F.2d at 209.  If

Cohen shows that these control aspects are subject to a genuine dispute, summary

judgment is inappropriate.  Fed. R. Bankr. P. 7056.

As the Eighth Circuit B.A.P. and other courts have noted, creditor leverage,

however, is not in and of itself control.  MCA Fin. Grp. v. Hewlett–Packard (In re

Fourthstage Techs., Inc.), 355 B.R. 155, 159–60 (Bankr. D. Ariz. 2006).  A close

relationship between the parties is not enough to conclusively establish the creditor

as an insider; it is not even enough if that close relationship gave the creditor some

extra influence.  Id.

18

The <u>Fourthstage</u> case provides a good illustration.  In <u>Fourthstage</u>, Hewlett–

Packard ("HP"), had financed Fourthstage's predecessor company, Aperian, so that

it could purchase HP products and resell them.  <u>Id.</u> at 157.  The note required

Aperion to use one-half of all HP financing on the purchase of HP products.  <u>Id.</u>

HP discovered that Aperion had not complied with the terms of the financing

agreement and raised this concern with Fourthstage after it acquired Aperian.  <u>Id.</u>

at 157–58.  HP threatened default on the note, which Fourthstage would have been

required to publicly disclose, a potentially ruinous proposition.  <u>Id.</u>  Fourthstage

elected to settle with HP before declaring bankruptcy less than a year later.  <u>Id.</u>

The court held that HP was not an insider.  <u>Id.</u> at 160.  Though HP almost

certainly leveraged the debtor into paying HP, the debtor's acquiescence

constituted an action that might have been commercially "appropriate or

necessary."  <u>Id.</u>  In <u>Fourthstage</u>, the Court determined that while HP had used

leverage to obtain payment, it did so in an unobjectionable commercial context.

<u>Id.</u>  It distinguished this type of acceptable influence from another case where a

vendor received preferential transfers from a vendee.  <u>Id.</u> (citing <u>Shubert v. Lucent

Techs. (In re Winstar Commc'ns, Inc.)</u>, 348 B.R. 234, 255 (Bankr. D. Del. 2005),

<u>modified on other grounds</u>, 554 F.3d 382, 399 (3d Cir. 2009)).

19

In <u>Winstar</u>, the vendor Lucent Technologies controlled the distribution network and Winstar was an almost entirely captive buyer whose internal decisions the vendor essentially dictated.  348 B.R. at 280.  Lucent had forced Winstar to borrow from Lucent in order to purchase Lucent products to puff Lucent's sales numbers.  <u>Id.</u>  The court determined that this constituted an unacceptable level of influence tantamount to control, making Lucent an insider and the transfer it received avoidable.  <u>Id.</u> at 280, 283.

In this case, the potential for insider control existed.  However, it is not clear that any of Debtor's payments to Cohen resulted from actual control.  Cohen had no equity stake or formal ability to control Debtor.  Though there was a financing relationship between the parties, this is not determinative of control.  Cohen's "favored nation status," while indicative of a very close relationship, is not by itself dispositive of an ability to exercise control.  The financing could be viewed as within Cohen's ordinary dealing with Debtor.  Cohen viewed it as a function of trade credit.  So far, there is nothing to show Cohen forced Debtor into particular decisions or financing relationships like Lucent did to Winstar.  On the contrary, it was Debtor that voluntarily approached Cohen for financing.

20

Whether the financing relationship between Debtor and Cohen exceeded permissible boundaries so as to make Cohen an insider is in genuine dispute. There is no specific evidence that Cohen controlled Debtor. While there is strong evidence that principals of Cohen and Rubashkin enjoyed a social relationship and were close friends and business associates, the full nature of Debtor's and Cohen's interactions are in genuine dispute. Since Cohen, as the non-moving party, is entitled to favorable inferences from this murky relationship, the Trustee is not entitled to summary judgment on Cohen's insider status.

### 2.    Insolvency

The Trustee must also prove that the preferential transfer occurred while the Debtor was insolvent. 11 U.S.C. § 547(b)(3). The Trustee bears the burden on his motion for summary judgment of proving such insolvency during the year leading up to the bankruptcy petition which was filed on November 4, 2008. 11 U.S.C. § 547(f); Fed. R. Bankr. P. 7056.

The Trustee has presented balance sheet and cash-flow evidence that Debtor was insolvent during the period of November 2007 to November 2008. The transfers took place in March and April of 2008. Cohen attempts to controvert this assertion of insolvency with a financial statement analysis that concludes Debtor

21

was solvent on June 30, 2006 and June 29, 2007.  This analysis discusses solvency one year before the transfers, but fails to address the one-year period—November 4, 2007 to November 4, 2008—before filing.

Cohen also argues that the Trustee's own statements prove Debtor was solvent during this time.  Cohen points to Trustee's statements about Debtor as being solvent as a marketing ploy for Debtor's assets.  The Trustee's prior intimation of solvency outside of litigation does not estop him from claiming that the debtor was insolvent for purposes of this matter.  Philip Servs. Corp. v. Luntz (In re Philip Servs.), 267 B.R. 62, 67 (Bankr. D. Del. 2001).  Moreover, Cohen has offered no evidence beyond the single statement that shows the Trustee had otherwise described Debtor to be solvent.  Even if Defendants could prove the Trustee made this single representation, the principle of Phillip Services establish that a trustee's prior statements or actions do not prejudice later litigation, unless the defendant have shown detrimental reliance so as to invoke equitable estoppel.  Phillips, 267 B.R. at 67 (citing Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)).

In order to survive summary judgment, the Defendants cannot simply hope to impeach evidence at trial.  Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008)

22

("Once the movant has supported the motion, the non-moving party 'must

affirmatively show that a material issue of fact remains in dispute and may not

simply rest on the hope of discrediting the movant's evidence at trial.'" (quoting

Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996))).  Defendants

have not controverted the Trustee's insolvency analysis, nor have they

demonstrated any detrimental reliance on Trustee's representations allegedly made

before this litigation that the Debtor was solvent prepetition.  Absent contrary

evidence on either of these arguments, Debtor's insolvency is not an issue of a

genuine dispute,[2] and the Court grants the Trustee summary judgment on this issue.

---

[2] The Court reaches this conclusion independent of its prior determinations
of solvency in similar matters arising from the same period.  It appears to be a
well-settled principle of bankruptcy that the determination of insolvency between
debtor and a creditor is not binding on a creditor who later seeks to defend against
a trustee's preference action by challenging insolvency.  See In re Russell, 109
B.R. 359, 361 (Bankr. W. D. Ark. 1989) (citing Gratiot County State Bank v.
Johnson, 249 U.S. 246, 249 (1919)).  The Supreme Court addressed precisely this
question in Gratiot under the Bankruptcy Act; it held that a later creditor was not
precluded by a prior case which had found the Debtor to be insolvent from
defending against a preferential transfer by alleging a Debtor had been solvent.  Id.

### 3.    Cohen Received More than He Would Have in Bankruptcy

Cohen also argues the Trustee has failed to show that Cohen improved his position beyond what he would have received in bankruptcy as required by § 547(b)(5).  To make this determination, courts apply a hypothetical liquidation test that looks at what the creditor would have received in bankruptcy had the alleged preferential transfer not been made.  Falcon Creditor Trust v. First Ins. Funding (In re Falcon Prods.), 381 B.R. 543, 548 (B.A.P. 8th Cir. 2008).  The hypothetical liquidation value of the estate is determined as of the date of the bankruptcy petition.  Id.  In liquidating an estate, "the law is generally well-settled that unless creditors would receive a 100% payout, an unsecured creditor who received a payment during the preference period is in a position to receive more than it would have received in a Chapter 7 liquidation."  Betty's Homes, Inc. v. Cooper Homes, Inc. (In re Betty's Homes, Inc.), 393 B.R. 671, 677 (Bankr. W.D. Ark. 2008).

The Trustee provided an insolvency analysis that showed the estate was insolvent on the petition date and for the year preceding.  This insolvency analysis shows that unsecured creditors—like Cohen—would have received nothing in a

24

hypothetical liquidation.  This means that any amount he received before the filing

improved his position over and above his pro rata share in a Chapter 7 liquidation.

Cohen has not provided evidence disputing the value of Debtor on the

petition date.  He has not demonstrated the debts were secured.  He has raised no

genuine dispute of material fact concerning this element.  Trustee's motion for

partial summary judgment on this issue is appropriate.

**D.    COHEN'S MOTION FOR SUMMARY JUDGMENT ON
TRUSTEE'S PREFERENCE CLAIMS**

Cohen also moved for summary judgment on his defenses to the Trustee's

preferential transfer claims.  Cohen argues that even if Trustee could establish the

prima facie elements for a preferential transfer claim, he is entitled to summary

judgment on his defenses.  Those defenses are: (1) that he made a

contemporaneous exchange for new value with Debtor that would defeat the

Trustee's recovery under 11 U.S.C. § 547(c)(1); and (2) any recovery from Cohen

should be reduced under 11 U.S.C. § 547(c)(4) in the amount that Cohen

subsequently advanced after Debtor made the allegedly preferential payments.

25

### 1.    Contemporaneous  Exchange for New Value

Cohen argues that he and Debtor intended to make, and in fact made, a contemporaneous exchange for new value on the transfers Trustee is attempting to recover as preferences.  In order to prevail, Cohen must prove (1) each party intended the exchange to be contemporaneous, (2) that it was actually contemporaneous, and (3) that the debtor received new value.  11 U.S.C. § 547(c)(1); Silverman Consulting, Inc. v. Canfor Wood Prods. Mktg. (In re Payless Cashways, Inc.), 306 B.R. 243, 249 (B.A.P. 8th Cir. 2004).

Section 547(a)(2) of the Bankruptcy Code defines new value.  "New value means money, or money's worth in goods, services, or credit, or release by transfer of property previously transferred to such transferee . . . but does not include an obligation substituted for an existing obligation."  11 U.S.C. § 547(a)(2).  A debtor who pays funds to a creditor to pay an antecedent debt has not received new value. Manchester v. First Bank & Trust Co. (In re Moses), 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000) ("[T]he mere satisfaction of an antecedent debt is not 'new value' under § 547(a)(2).").

The Trustee has argued that the short term loans allegedly made here by Cohen to Debtor are ineligible to be considered "new value."  Velde v. Kirsch, 543

26

F.3d 469, 473 (8th Cir. 2008).  The Trustee also argues that Debtor and Cohen

neither intended the exchange to be contemporaneous nor had Cohen succeeded in

making such an exchange.

Cohen's argument that the record shows, without dispute, that he made a

contemporaneous exchange with Debtor where Cohen provided new value in

money, services, credit, or property is not correct.  Cohen has not even shown that

it is without dispute that Debtor received new value.  11 U.S.C. § 547(c)(1)(A).

Cohen's general testimony in his affidavit and the accompanying balance sheet do

not adequately link the payments Debtor made to Cohen with any significant return

of new value to Debtor.  As noted, simply retiring debt is not new value.  See In re

Moses, 256 B.R. at 652.  At a minimum, without even reaching the issues of

exchange and intent, there are factual questions which remain on what "new" value

Cohen provided.  Cohen simply has not shown specific, uncontroverted facts

which entitle him to summary judgment on his contemporaneous exchange for new

value defense.

### 2.    Subsequent New Value

Cohen also asserts a "subsequent new value" defense.  Cohen claims, at a

minimum, that the Trustee's recovery of a preferential transfer should be reduced

27

by the $115,000 provided to Debtor during the one-year transfer period.  The

subsequent new value defense is, like the contemporaneous exchange for new

value, a statutory defense and relies on the same definition of "new value."  11

U.S.C. § 547 (c)(4).  "The statute defines new value as 'money or money's worth

in goods, services, or new credit . . . ."  S. Technical Coll., Inc. v. Hood, 89 F.3d

1381, 1384 (8th Cir. 1996) (quoting 11 U.S.C. § 547 (a)(2)).

   The subsequent new value defense is available to encourage a creditor to

finance a troubled debtor.  G.H. Leidenheimer Banking Co.. v. Sharp (In re SGSM

Acquisitio Co.), 439 F.3d 233, 241 (5th Cir. 2006).  The defense is allowed

because it promotes not only the extension of credit, but also has no detrimental

effect on other creditor's rights in bankruptcy.  Harrah's Tunica Corp. v. Meeks (In

re Armstrong), 291 F.3d 517, 526 (8th Cir. 2002) ("[The] inquiry under § 547(c)(4)

is 'whether the new value replenishes the estate'" (quoting Kroh Bros Dev. Co. v.

Cont'l Constr. Eng'rs (In re Kroh Bros. Dev. Co.), 930 F.2d 648, 652 (8th Cir.

1991))).  The "new value" would replenish the estate.

   A creditor's showing only that it provided subsequent new value is not

sufficient for the defense to apply.  S. Technical Coll., Inc, 89 F.3d at 1384.  Even

if a creditor shows it provided new value, if the debtor then makes a second

28

payment back to the creditor because of the new value he received, this second payment negates the new value that replenished the estate.  See id.  Stated another way:  "[T]he new value defense [should be] permitted unless the debtor repays the new value by a transfer which is otherwise unavoidable."  Phoenix Restaurant Group v. Ajilon Prof'l Staffing (In re Phx. Rest. Grp.), 317 B.R. 491, 498 (Bankr. M.D. Tenn. 2004) (quoting Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.), 315 B.R. 443, 471 (Bankr. S.D. Ohio 2004)); 11 U.S.C. § 547(c)(4).

In March and April of 2008, Debtor made $265,000.00 worth of payments to Cohen.  During that same period, Cohen made intermittent transfers to Debtor totaling $115,000.00.  He transferred funds to Debtor on February 5, February 20, March 11, and March 19 of 2008.  Debtor paid Cohen on February 26 and March 31.

These facts leave unclear whether—or to what extent—a subsequent new value defense would be available.  Cohen made payments to Debtor after the alleged preferential transfers.  Whether this was "new value"—unrelated to Debtor's balance sheet—is not readily apparent.  It also remains unclear whether the Debtor's transfer to Cohen after the payments is a repayment of that new value or for other older debt.  The evidence does not undisputedly show the relation

29

between each of these transactions and certainly not clearly enough for the

Court to determine the availability of the defense.  Motions for summary

judgment are not an effective way to determine whether this mitigation

defense is applicable because of the fact intensive inquiry described above.

See Phoenix, 317 B.R. at 499–500.  Given the current disposition, it would

be imprudent to engage in the inquiry this mitigation defense requires.  Id. at

500.

## CONCLUSION

Trustee has demonstrated that it is not disputed that Debtor was insolvent

and that Cohen received more money than he would have in a Chapter 7

liquidation.  Trustee's Motion for Partial Summary Judgment is granted on those

issues only.  Trustee moved for Partial Summary Judgment on the insider issue and

that portion of the Motion is denied because "equivalent value" was shown on the

undisputed facts.  The Court denies Defendant Cohen's cross-motion on the

preference claims.

**WHEREFORE**, the Trustee's Motion for Partial Summary Judgment is

**GRANTED** in regard to Debtor's insolvency and Defendant Cohen's improved

position and **DENIED** as to Defendant's insider status.

30

**FURTHER**, Defendant Cohen's Motion for Summary Judgment is

**GRANTED on Trustee's** fraudulent transfer claims and **DENIED** on the

preferential transfer claims.

Dated and Entered: April 3, 2013

_____

**THAD J. COLLINS, CHIEF JUDGE**
**UNITED STATES BANKRUPTCY COURT**